Lenard E. Schwartzer, Esq., NV Bar No. 399
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas NV 89146-5308
Telephone:   (702) 228-7590
Facsimile:    (702) 892-0122
E-Mail:         bkfilings@s-mlaw.com

*Attorneys for Howard Misle*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>HOWARD MISLE,<br><br>                            Alleged Debtor. | Case No. BK-S-18-15705-leb<br><br>Chapter 11 (Involuntary)<br><br>**MOTION FOR DISMISSAL OF INVOLUNTARY CASE**<br><br>Hearing Date:  December 17, 2018<br>Hearing Time:  1:30 p.m. |

      Howard Misle (the "Alleged Debtor"), by and through his counsel, Schwartzer & McPherson Law Firm, requests entry of an order for dismissal of this involuntary Chapter 7 case on the grounds that the Alleged Debtor's current income comes from management of a marijuana business and such assets cannot be administered by a Chapter 7 Panel Trustee or the Bankruptcy Court.

## I.  JURISDICTION

      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.  CASE BACKGROUND

1.     On September 24, 2018, 5 alleged creditors of the Alleged Debtor, filed an involuntary petition under Chapter 7 the Bankruptcy Code against the Alleged Debtor in Las Vegas, Nevada, thereby commencing bankruptcy case number 18-15705-leb.  On October 18, 2018, an Amended Summons was issued.

2.     As of the date of this Motion, the Petition and Summons have not been served on

1 the Alleged Debtor.

2   3.   The Alleged Debtor is employed by the manager of a Nevada licensed marijuana production facility located in Pahrump, Nevada. Since the beginning of this year, his only source of income has come from such management services to a marijuana business.

   4.   The Alleged Debtor is the manager of several entities which are engaged in the Nevada licensed marijuana business. In addition, the Alleged Debtor is the manager of entities which are engaged in other businesses.

   5.   Pursuant to the rules enunciated by the Office for U.S. Trustees, Chapter 7 Trustees may not administer marijuana business or assets derived from marijuana businesses and such cases should be dismissed.

### III. MEMORANDUM OF LAW

Bankruptcy Code §707(a) provides "The court may dismiss a case under this chapter only after notice and a hearing and only for cause…"

**1. Dismissal for "cause" under § 707(a)**

> A bankruptcy court may dismiss a chapter 7 case if the movant establishes "cause," which includes such conduct as (1) unreasonable delay in prosecuting the case, (2) failure to pay statutory fees and charges, or (3) failure to file financial disclosures. § 707(a)(1)-(3). Section 707(a) does not define "cause," but the Ninth Circuit has recognized that "cause" for dismissal is not limited to the three examples in the statute. *Neary v. Padilla (In re Padilla),* 222 F.3d 1184, 1191 (9th Cir.2000).

*In re Franco*, 2016 WL 3227154, at *3 (B.A.P. 9th Cir. June 2, 2016).

**Dismissal of Marijuana Related Bankruptcy Case**

The Office for United States Trustees ("UST") prohibits marijuana businesses and the proceeds from marijuana businesses from being administered in bankruptcy cases.

> It is the policy of the United States Trustee Program that United States Trustees shall move to dismiss or object in all cases involving marijuana assets on grounds that such assets may not be administered under the Bankruptcy Code even if trustees or other parties object on the same or different grounds.

See letter dated from Clifford White, Director, dated April 26, 2017, a copy of which is attached as **Exhibit "A"**. This position was reiterated in December by the UST in a memo

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

entitled "Why Marijuana Assets May Not Be Administered in Bankruptcy", a copy of which is attached as **Exhibit "B"**. The memo states:

> The USTP's response to marijuana-related bankruptcy filings is guided by two straightforward and uncontroversial principles. First, the bankruptcy system may not be used as an instrument in the ongoing commission of a crime and reorganization plans that permit or require continued illegal activity may not be confirmed. Second, bankruptcy trustees and other estate fiduciaries should not be required to administer assets if doing so would cause them to violate federal criminal law.
>
> The USTP's policy of seeking dismissal of marijuana bankruptcy cases that cannot lawfully be administered is not a new one, but rather it is a policy that has been applied consistently over two presidential administrations and under three Attorneys General. Nor are these concerns unique to marijuana. These same principles would also guide the USTP's response in a case involving any other type of ongoing criminal conduct or administration of illegal property.

Courts dismiss bankruptcy cases to the extent estate assets are used for or generated by the operation of a federally prohibited marijuana business. *Arenas v. U.S. Tr. (In re Arenas)*, 535 B.R. 845, 852 (10th Cir. BAP 2015); *In re Medpoint Mgmt., LLC*, 528 B.R. 178, 184–85 (Bankr. D. Ariz. 2015), *vacated in part, Medpoint Mgmt., LLC v. Jensen (In re Medpoint Mgmt., LLC)*, BAP No. AZ–15–1130–KuJaJu, 2016 WL 3251581 (9th Cir. BAP Jun. 3, 2016); *In re Johnson*, 532 B.R. 53, 56–57 (Bankr. W.D. Mich. 2015); *In re Rent–Rite Super Kegs W., Ltd.*, 484 B.R. 799, 810 (Bankr. D. Colo. 2012).

A recent analysis of these cases was made by the Bankruptcy Court in Florida as follows:

> In *In re Rent–Rite Super Kegs W. Ltd.*, 484 B.R. 799, 809 (Bankr. D. Colo. 2012), the court ruled it would dismiss or convert the debtor's chapter 11 case because the debtor derived 25% of its revenues from leasing space to a tenant who was engaged in growing marijuana in a business legal under state law, but which business did not have DEA approval. The court noted that even if there were no good faith requirement in section 1129, the court could not confirm a plan that relied on income derived from a criminal activity.
>
> In *In re Jerry L. Johnson*, 532 B.R. 53 (Bankr. W.D. Mich. 2015) the U.S. Trustee filed a motion to dismiss the chapter 13 case of a debtor whose income was derived partially from the cultivation and sale of marijuana to three patients to whom he also provided caregiver services. The debtor, who was licensed to grow and sell marijuana under state law grew the marijuana in his home. The debtor also had social security income which income he testified was the source of his chapter 13 payments to the chapter 13 trustee. The court held that, notwithstanding that the

debtor's payments were from an "untainted" source, the debtor's continuing operation of a marijuana business, even if the income were segregated, would require the court, the trustee, and even the debtor (who under chapter 13 retains property of the estate)[19] to violate federal law, which they could not. Because the debtor had legitimate reasons to be in bankruptcy, the court said rather than dismiss the case the debtor could stop operating the marijuana business; otherwise, the case would have to be dismissed.

In *In re Arenas*, 535 B.R. 845 (10th Cir. BAP 2015), a chapter 7 case was filed by a state-licensed marijuana grower and his wife, whose income also included lease income from a state licensed marijuana dispensary. The U.S. Trustee filed a motion to dismiss the case on the basis that the chapter 7 trustee could not administer the assets—it would be a violation of federal law to which the trustee is subject. In response the debtors filed a motion to convert the case to a case under chapter 13 which motion the bankruptcy court denied. The bankruptcy court ruled that because the debtors' plan would have been funded from an activity illegal under Federal law—the growing and dispensing of medical marijuana—it was not a plan "proposed in good faith and not by any means forbidden by law" a confirmation requirement under 11 U.S.C. § 1325(a)(3). Since the debtors could not confirm a plan without the marijuana income, the debtors could not qualify to be debtors in a chapter 13 case. The court was also concerned because confirming the plan would require the Chapter 13 Trustee to violate federal criminal law to administer the plan payments. The bankruptcy court then granted the U.S. Trustee's motion to dismiss. The B.A.P. affirmed both the bankruptcy court's decision to deny the debtors' motion to convert their case to chapter 13 and to grant the U.S. Trustee's motion to dismiss. *Id.* at 855. *See also In re McGinnis*, 453 B.R. 770 (Bankr. D. Or. 2011) (holding that a chapter 13 plan was unconfirmable because it relied on a future change to Oregon medical marijuana law and it violated federal law).

Even if the Debtor was otherwise of "pure mind and heart" when this case was filed, the very fact that the Amended Plan is based on income derived from the sale of marijuana can be deemed "bad faith". In *Arenas* the B.A.P. affirmed the bankruptcy court's finding that, notwithstanding that the debtors appeared "to be sincere and credible" and "their motives in seeking bankruptcy relief were not improper", nonetheless, "[i]t is objectively unreasonable for them to seek Chapter 13 relief whether their intentions are kindly or not" and, therefore, the B.A.P. upheld the bankruptcy court's finding of bad faith. 535 B.R. at 852–53. *Accord In re Jerry L. Johnson*, 532 B.R. at 53.

*Arm Ventures, LLC*, 564 B.R. 77, 84–85 (Bankr. S.D. Fla. 2017) (footnotes omitted).

In re *Medpoint Mgt., LLC*, 528 B.R. 178 (Bankr. D. Ariz. 2015), *reversed in part on other issues*, 2016 WL 3251581 (9th Cir. BAP 2016), **the involuntary petition** against a company involved in the (legal under state law) medical marijuana business, was dismissed because the alleged debtor was engaged in activity illegal under federal law. The holding—the cultivation and

sale of marijuana is illegal under federal law and therefore the federal bankruptcy law and the federal courts are not available to any person engaged in that business.

> The Court will not enter an order for relief which would then result in the appointed chapter 7 trustee necessarily violating federal law (the CSA) in carrying out his or her duties under the Code. The dual risks of forfeiture of Medpoint's assets and a trustee's inevitable violation of the CSA in administration of a Medpoint chapter 7 estate constitute cause for this Court to dismiss Petitioning Creditors' involuntary Petition under section 707(a). The Court grants Medpoint's Motion.

*In re Medpoint Mgmt., LLC*, 528 B.R. 178, 186 (Bankr. D. Ariz. 2015), *reversed in part on other issues,* 2016 WL 3251581 (B.A.P. 9th Cir. June 3, 2016).

This is not a case of a 90 year old debtor who lives in a nursing home who leases a small portion of a strip mall to a marijuana dispensary such as in *In re Olson*, 2018 WL 989263, at *6 (B.A.P. 9th Cir. Feb. 5, 2018), where there might be a question whether marijuana assets were knowingly received or if the voluntary debtor was acting in good faith. This is a case in which the Alleged Debtor's income comes from the operation of a Nevada licensed marijuana business.

## CONCLUSION

Based upon the foregoing, the Trustee requests that the Court enter an order dismissing this involuntary bankruptcy case.

A proposed form of Order is attached to this Motion as **Exhibit "C."**

Dated: November 13, 2018.

/s/Lenard E. Schwartzer
Lenard E. Schwartzer, Esq.
Schwartzer & McPherson Law Firm
2850 S. Jones, Blvd., Suite 1
Las Vegas, NV 89146
Tel: (702) 228-7590
*Attorneys for Howard Misle*

# EXHIBIT "A"



**U.S. Department of Justice**

Executive Office for United States Trustees

---

*Office of the Director*                        *Washington, DC  20530*

April 26, 2017

Dear Chapter 7 and Chapter 13 Trustees:

    Your role in administering bankruptcy estates is indispensable to the effective and lawful functioning of the entire bankruptcy system. I know that in the past few years, the United States Trustees have reached out to you to ensure that we are informed about all cases assigned to you that involve marijuana assets, which are proscribed under federal law and may not be administered under the Bankruptcy Code.[1] This directive pertains even in cases in which such assets are not illegal under state law.

    In recent months, we have noticed an increase in the number of bankruptcy cases involving marijuana assets. This is to reiterate and emphasize the importance of prompt notification to your United States Trustee whenever you uncover a marijuana asset in a case assigned to you. Our goal is to ensure that trustees are not placed in the untenable position of violating federal law by liquidating, receiving proceeds from, or in any way administering marijuana assets. In some cases, trustees move to dismiss or object to a chapter 13 plan confirmation on grounds unrelated to the controlled substance. You should continue to file any motions or objections you deem appropriate. It is the policy of the United States Trustee Program that United States Trustees shall move to dismiss or object in all cases involving marijuana assets on grounds that such assets may not be administered under the Bankruptcy Code even if trustees or other parties object on the same or different grounds.

    I appreciate your continued and heightened attention to our directive for prompt notification of all cases involving marijuana assets. I am grateful for all the work you do every day to uphold the integrity of the bankruptcy system and to satisfy the highest fiduciary standards. Your accomplishments, while not always heralded, are much appreciated.

Sincerely yours,

*[signature]*

Clifford J. White III
Director

cc:    Deputy Director/General Counsel
       United States Trustees
       Assistant United States Trustees

---

[1] Cases involving marijuana assets include cases in which the marijuana assets would leave the estate through exemption or abandonment.

# EXHIBIT "B"

## Why Marijuana Assets May Not Be Administered in Bankruptcy

*Written by:*
*Clifford J. White III*
*Director, Executive Office for U.S. Trustees*
*Washington, DC*

*John Sheahan*
*Trial Attorney, Executive Office for U.S. Trustees*
*Washington, DC*

Marijuana continues to be regulated by Congress as a dangerous drug, and as the Supreme Court has recognized, the federal prohibition of marijuana takes precedence over state laws to the contrary.[1] The primacy of federal law over state law is hardly a novel proposition and has been the rule since the ratification of the Constitution. Thus, whenever a marijuana business files for bankruptcy relief, a threshold question is whether the debtor can be granted relief consistent with the Bankruptcy Code and other federal law. If the answer to that question is no, the United States Trustee Program (USTP), in its role as the watchdog of the bankruptcy system, will move to dismiss.

Illegal enterprises simply do not come through the doors of the bankruptcy courthouse seeking help to further their criminal activities. To obtain bankruptcy relief, some may try to hide the nature of their business or income, but bankruptcy courts require full financial disclosure and are not a hospitable forum for continuing a fraudulent or criminal scheme.

Marijuana businesses are a unique and unprecedented exception to this rule because they often involve companies that openly propose to continue their illegal activity during and after the bankruptcy. Those cases present a challenge to the bankruptcy system because they generally involve assets that are illegal even to possess. In contrast to other types of cases involving illegal businesses, in which the criminal activity has already terminated and the principal concern of the bankruptcy court is to resolve competing claims by victims for compensation, a marijuana bankruptcy case may involve a company that not only is continuing in its business, but is even seeking the affirmative assistance of the bankruptcy court

---

[1] Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.* (the "CSA"); *Gonzales v. Raich*, 545 U.S. 1, 12 (2005).

in order to reorganize its balance sheet and thereby facilitate its violations of the law going forward.

The USTP's response to marijuana-related bankruptcy filings is guided by two straightforward and uncontroversial principles. First, the bankruptcy system may not be used as an instrument in the ongoing commission of a crime and reorganization plans that permit or require continued illegal activity may not be confirmed. Second, bankruptcy trustees and other estate fiduciaries should not be required to administer assets if doing so would cause them to violate federal criminal law.

The USTP's policy of seeking dismissal of marijuana bankruptcy cases that cannot lawfully be administered is not a new one, but rather it is a policy that has been applied consistently over two presidential administrations and under three Attorneys General. Nor are these concerns unique to marijuana. These same principles would also guide the USTP's response in a case involving any other type of ongoing criminal conduct or administration of illegal property.

Although a recent ABI Journal article[2] takes the USTP to task for its marijuana enforcement efforts, it is noteworthy that the author fully agrees with the USTP's position as to the first of the two principles described above and appears to agree to a significant extent with the second. As the author concedes, "it hardly needs explanation that a bankruptcy court should not supervise an ongoing criminal enterprise regardless of its status under state law."[3] As to the second principle, "[i]t would obviously violate federal law for the trustee to sell marijuana."[4]

Given these concessions, the author's disagreement with the USTP's position would appear to be limited to a fairly narrow range of cases – those where administration of the estate would not require the trustee to sell marijuana (but would require the trustee to administer other marijuana-derived property), or where the debtor is a "downstream" participant in a marijuana business, such as a lessor of a building used for a marijuana dispensary.[5]

Yet under the CSA, there is no distinction between the seller or the grower of marijuana and the supposedly more "downstream" participants whom the article proposes to protect: all are in violation of federal criminal law. In particular,

---

[2] Steven J. Boyajian, "Just Say No to Drugs? Creditors Not Getting a Fair Shake When Marijuana-Related Cases Are Dismissed," *ABI Journal*, September 2017, at 24.
[3] *Id.* at 25.
[4] *Id.*
[5] *Id.* at 74.

section 856 of the CSA specifically prohibits knowingly renting, managing, or using property "for the purpose of manufacturing, distributing, or using any controlled substance;" section 863 of the CSA makes it a crime to sell or offer for sale any drug paraphernalia – which is defined to include, among other things, "equipment, product, or material of any kind which is primarily intended or designed for use" in manufacturing a controlled substance; and section 855 provides for a fine against a person "who derives profits or proceeds from an offense [of the CSA]."[6] Thus, not only would a trustee who offers marijuana for sale violate the law but so, too, would a trustee who liquidated the fertilizer or equipment used to grow marijuana, who collected rent from a marijuana business tenant, or who sought to collect the profits of a marijuana investment.

Although cases involving illicit proceeds of Ponzi schemes and other criminal activities – seen in such notorious cases as Enron, Dreier LLP, and Madoff – are administered in bankruptcy, they deal with the aftermath of fraud, usually after individual wrongdoers had been removed from the business. Such cases are wholly inapposite analogies to a marijuana case where the illegal activity is still continuing through the bankruptcy administration process and where bankruptcy relief may allow the company to expand its violations of law in the future. Nor do any of those cases involve proposed chapter 11 and 13 plans where the feasibility of the plan itself is directly premised on the continued receipt of profits from an illegal enterprise. And none of them requires the courts or trustees to deal with property of the kind described in the CSA, for which mere possession is a federal crime.

Similarly, although the author cites two decades-old decisions in support of his claim that "courts have not always shied away from handling marijuana-related bankruptcies,"[7] it is noteworthy that neither of those decisions involved active marijuana operations or would have required a bankruptcy trustee to administer any illegal marijuana assets.[8] Both *Chapman* and *Kurth Ranch* involved bankruptcy cases that were filed *after* law enforcement had arrested and seized the assets of marijuana growers. The legal issues raised by the current wave of marijuana filings were simply not present in those cases – neither case involved an ongoing violation of law, and in neither case were there any marijuana assets to be administered, because all illegal assets had been seized and disposed of prepetition.

Finally, the article suggests that the "ongoing conflict over marijuana policy" is one that should take place outside the bankruptcy system. The USTP

---

[6] Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*

[7] *Id.* at 25.

[8] *See Dep't of Revenue v. Kurth Ranch*, 511 U.S. 767 (1994); *In re Chapman*, 264 B.R. 565 (B.A.P. 2001).

agrees. But that does not mean that the USTP or the courts should turn a blind eye to bankruptcy filings by marijuana businesses. Rather than make its own marijuana policy, the USTP will continue to enforce the legislative judgment of Congress by preventing the bankruptcy system from being used for purposes that Congress has determined are illegal.

# EXHIBIT "C"

Lenard E. Schwartzer, Esq., NV Bar No. 399
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas NV  89146-5308
Telephone:      (702) 228-7590
Facsimile:       (702) 892-0122
E-Mail:           bkfilings@s-mlaw.com

*Attorneys for Howard Misle*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| In re: | Case No. BK-S-18-15705-leb |
|---|---|
| HOWARD MISLE, | Chapter 11 (Involuntary) |
| Alleged Debtor. | **ORDER GRANTING MOTION FOR DISMISSAL OF INVOLUNTARY CASE** |
| | Hearing Date:   December 17, 2018<br>Hearing Time:   1:30 p.m. |

The Alleged Debtor's Motion for Dismissal of Involuntary Case [ECF ___], having come before this Court after service on all the petitioning creditors; Howard Misle (the "Alleged Debtor"), being represented by Lenard E. Schwartzer, Esq. of the Schwartzer & McPherson Law Firm and other appearances having been made on the records; the Court having reviewed the Motion and any oppositions and having made its findings of fact and conclusions of law on the record pursuant to Bankruptcy Rule 7052 and F.R.Civ.P. Rule 52, it is

///

///

///

ORDERED that the involuntary petition be, and hereby is, dismissed.

Prepared by:

/s/Lenard E. Schwartzer
Lenard E. Schwartzer, Esq.
Schwartzer & McPherson Law Firm
2850 S. Jones, Blvd., Suite 1
Las Vegas, NV 89146
Tel: (702) 228-7590
*Counsel for Howard Misle*