Michael Smith (SBN 259267)
Heidi M. Cheng (SBN 289419)
Law Offices of Langley and Chang
4158 Fourteenth Street
Riverside, CA 92501
Telephone: (951) 383-3388
Fax: (877) 483-4434
Heidi@spclawoffice.com

Attorney for Petitioning Creditor(s)

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>Howard Misle,<br><br>           Alleged Debtor. | Case No.  BK-S-18-15705-btb<br><br>Chapter  7 (Involuntary)<br><br>**PETITIONING CREDITORS' OPPOSITION TO DEBTOR'S MOTION FOR STAY OF PROCEEDINGS PENDING APPEAL**<br>Hearing Date: March 12, 2019<br>Hearing Time: 1:30 p.m. |

CASS, INC., NICO ALLOYS, INC., CHAL SUPRIZIO, DENYSE MACMILLAN, and LARRY LEVINE ("**Petitioning Creditors**"), hereby submit this Opposition to Debtor's Motion for Stay of Proceedings Pending Appeal ("**Motion for  Stay**") filed by Howard Misle ("**Alleged Debtor**").  This opposition is based on the pleadings and records on file in this matter.

## I.    FACTS

### PROCEDURAL FACTS

1.  On September 24, 2018, Petition Creditors filed this instant Involuntary Chapter 7 [ECF 1] against Debtor on the grounds that Debtor is not paying his debts as they come due.

2.  On November 2, 2018, the Involuntary Petition and Amended Summons [ECF 30] were served on Debtor.

3.  On November 14 2018, Alledged Debtor filed and served a Motion for Dismissal of Involuntary Case [ECF 31], which is attached hereto as Exhibit "1."

1

4.  On December 3, 2018, Petitioning Creditors filed and served an Opposition to the Motion for Dismissal [ECF 37].

5.  On December 3, 2018, Rubin Jurman filed a Joinder in the Opposition [ECF 41].

6.  On December 10, 2018, Debtor filed and served a Reply Brief in Support of Motion for Dismissal [ECF 52].

7.  On December 17, 2018, the Bankruptcy Court heard oral argument and on January 2, 2019 issued a written ruling denying the Motion for Dismissal [ECF 57], which is attached hereto as Exhibit "2."

8.  On January 14, 2019 Debtor filed this instant Motion for Leave to Appeal Order Denying Motion for Dismissal of Involuntary Petition [ECF 60].

9.  On January 15, 2019 Debtor an answer to the Involuntary Petition [ECF 63], which is attached hereto as Exhibit "3."

## FACTS RELATED TO MERITS OF OPPOSITION

10. Alleged Debtor asserts that his taxable income, which is derived from the management of a medical marijuana grow facility.

11. Alleged Debtor asserts that he has a 25% beneficial interest in a company which operates a medical marijuana grow facility.

12. Alleged Debtor asserts that he has a 50% beneficial interest in Cornerstone Nevada, LLC, which does not have any ties to marijuana related assets.

## II. ISSUE

There are four issues before the Court.  The first is whether Alleged Debtor has made a strong showing that his appeal is likely succeed on the merits.  The second is whether Alleged Debtor has demonstrated that he will be irreparably injured absent a stay.  The third is whether Debtor has demonstrated that issuance of a stay will not substantially injure the Petitioning Creditors. The fourth is whether Debtor has demonstrated that a stay would benefit the public interest.

## III.    ARGUMENT

### ALLEGED DEBTOR HAS FILED TO DEMONSTRATE THAT HE HAS MET THE MINIMUM THRESHOLD AS TO ALL FACTORS.

No matter how overwhelming the findings on one of the four factors, this court must find that Alleged Debtor has satisfied, more than minimally, all of the factors.  *Nken v. Holder,* 556 U.S. 418, 433-434, 129 S.Ct. 1749, 173 L. Ed. 2nd 550 (2009).  To be entitled to a stay pending appeal, Alleged Debtor must make a "minimum permissible showing" with respect to each of the four factors. *Leiva-Perez v. Holder,* 640 F.3d 962, 965 (9th Cir. 2011).  Provided Alleged Debtor as to each factor, the Court may "balance the various stay factors once they are established." *Id.* at 965.

Petitioning Creditors take the position that Alleged Debtor has failed to sufficiently establish all four factors.  Specifically, Alleged Debtor has failed to satisfactorily prove the District Court will entertain the appeal of an interlocutory order and that his marijuana assets would become property of the bankruptcy estate, thus leading probable irreparable harm through loss of his medical marijuana license. Lastly, Alleged Debtor has failed to show Petitioning Creditors would not be harmed by a stay or that a stay would serve a credible public interest.

## A) ALLEGED DEBTOR HAS NOT ESTABLISHED THAT HIS APPEAL IS LIKELY TO SUCCEED ON ITS MERITS.

The order denying Alleged Debtor's motion for dismissal is an interlocutory order. Therefore, it is unlikely the District Court will find the appeal within its jurisdiction. Furthermore, should the District Court entertain the appeal it will not find a controlling question of law as to which there is substantial ground for difference.

### 1) DUE TO ITS INTERLOCUTORY NATURE, IT IS UNLIKELY THAT THE DISTRICT COURT WILL FIND THE ORDER DENYING DEBTOR'S MOTION FOR DISMISSAL WAS PROPERLY APPEALED.

28 U.S.C. §158(a)(1) reads in pertinent part:

> "The district courts of the United States shall have jurisdiction to hear appeals  (1) from final judgments, orders, and decrees…"

An interlocutory order is one which does not finally determine a cause of action, but instead decides only an intervening matter. *In re Kashani*, 190 Bankr. 875, 882 (9th Cir. BAP 1995). To become final, the order must end the litigation or dispose of a complete claim for relief, leaving nothing for the court to do but execute the judgment. *Id.*   "The denial of a motion to dismiss is an interlocutory order." *Leisure Dev. Inc. v. Burke (In re Burke)*, 95 B.R. 716, 717 (9th Cir. BAP 1989) (citing *John E. Burns Drilling Co. v. Central Bank of Denver*, 739 F.2d 1489 (10th Cir. 1984)). Interlocutory orders are generally not appealable as of right. *In re Bertain*, 215 B.R. 438, 441 (9th Cir. B.A.P. 1997).

The right to appeal a denial of a motion to dismiss a voluntary chapter 7 case under §707(b) in is not analogous to the situation at hand. Candidly, it can be argued that a denial of a motion to dismiss under 707(b) can be construed as final ruling.  The majority of circuits that have addressed the issue have concluded that orders on motions to dismiss for abuse [§707(b)] of Chapter 7 are appealable. *See Morse v. Rudler (In re Rudler)*, 576 F.3d 37, 43 (1st Cir.

2009) (collecting cases); *but see Barben v. Donovan (In re Donovan )*, 532 F.3d 1134, 1137 (11th Cir. 2008) (holding that an order denying a motion to dismiss a Chapter 7 case under an earlier version of § 707(b) was not appealable). These circuits recognize that the current version of § 707(b), part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, "manifest[s] a congressional policy to police all Chapter 7 cases for abuse at the outset of a Chapter 7 proceeding" as well as "pragmatic considerations that indicate that the denial of a § 707(b) motion to dismiss is different from the denial of other motions to dismiss." *McDow v. Dudley*, 662 F.3d 284, 288 (4th Cir. 2011). Section 707(b) creates a statutory gateway based on whether the case is abusive, and an order denying that motion to dismiss as abusive, in effect, finally and conclusively resolves the issue. "If the denial of a § 707(b) motion to dismiss cannot be appealed immediately . . . , the Chapter 7 proceedings would have to be completed before it could be determined whether the proceedings were abusive in the first place." *McDow*, 662 F.3d at 289-90.

Unlike a voluntary bankruptcy filing, when an involuntary bankruptcy petition is filed, a debtor is not immediately placed into bankruptcy and the debtor may continue to use, acquire, or dispose of his property as if an involuntary bankruptcy case had not been filed. Instead, an involuntary bankruptcy petition functions more like a complaint asking the court to declare that the debtor should be put into bankruptcy. Like a complaint, the involuntary petition must be served together with a summons. The bankruptcy petition must indicate which of two circumstances justifies the involuntary bankruptcy: (1) the debtor isn't paying debts as they come due, or (2) within the last 120 days, a custodian, receiver, or agent took control of the debtor's property to enforce a lien. Once filed, the debtor can respond to the petition. If the debtor fails to do so, the court will allow the matter to move forward, and the debtor will have to participate in the bankruptcy. If the debtor responds, the court will set a hearing and decide whether the bankruptcy should go forward. If the bankruptcy court ultimately rules in favor of the

petitioning creditors, an order for relief is entered and the debtor is officially placed into bankruptcy and is subject to the bankruptcy code's provisions and supervision by the bankruptcy court.

Here, Alleged Debtor finds himself in an involuntary Chapter 7. Furthermore, he has been served with the petition that alleges he is generally not paying his debts as they come due and that said debts are free from bona fide dispute. Alleged Debtor filed a motion to dismiss his case for cause, under §707(a) of the bankruptcy code. As "cause" Alleged Debtor citied the U.S. Trustee's policy of prohibiting marijuana businesses and the proceeds of marijuana businesses from being administered in bankruptcy cases. To support his argument Alleged Debtor cited five bankruptcy cases, with varying degrees of applicability. In the denial of Alleged Debtor's motion to dismiss, this Court opined that the U.S. Trustee's position was not statutory authority or otherwise binding on the Court. Furthermore, this Court found that in none of the Courts in the cases cited by Debtor, required mandatory dismissal of all cases involving marijuana assets.

The order denying Alleged Debtor's motion to dismiss did not finally determine a cause of action, but instead decided only an intervening matter, specifically, whether there was cause to deny Debtor's case under §707(a). The Court still has to determine whether Alleged Debtor belongs in the bankruptcy by determining amongst other things, whether Alleged Debtor has not been paying his debts as they come due and whether those debts are free from bona fide dispute. Only the determination of those threshold questions will end the litigation or dispose of a complete claim for relief, leaving nothing for the court to do but execute the judgment. Because the order denying Debtor's motion to dismiss is an interlocutory order, "there is no direct right of appeal." *In re Bertain,* 215 B.R. at 441.

The order denying Debtor's motion to dismiss is an interlocutory order and not a final judgment, order of decree. Therefore, it is doubtful the District Court will find the order denying

Alleged Debtor's motion was properly appealed, which goes against a finding that Alledged Debtor will be successful on appeal.

### 2) THERE IS NO CONTROLLING QUESTION OF LAW AS TO WHICH THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION

Alleged Debtor asserts that there is a dearth of applicable precedent support that Alleged Debtor can, at a minimum, show he has a substantial case for relief on the merits. Firstly, Alleged Debtor asserts that this Court erred in failing to consider the United States Trustee's directives to chapter 7 trustees concerning marijuana related businesses as binding on the Court. Secondly, Alleged Debtor asserts that this Court erred in allowing this case to go forward because of the existence of non-marijuana related assets.

Alleged Debtor's main argument to dismiss this case, proposed in Alleged Debtor's Motion for Dismissal, was that "[p]ursuant to the rules of enunciated by the Office for U.S. Trustees, Chapter 7 Trustees may not administer marijuana business or assets derived from marijuana businesses and such cases should be dismissed." (See Exhibit "1" page 2 lines 8-10) Alleged Debtor took the position that it was absolutely mandated that any case involving marijuana be dismissed, though Alleged Debtor failed to provide evidence of any controlling rule, statute or order in support of his position. Alleged Debtor now proposes three questions for the Court to consider: (1) Is the United States Trustee's policy against administering State licensed marijuana assets grounds for dismissal of an involuntary bankruptcy case? (2) Should an involuntary bankruptcy case be dismissed if the alleged debtor's sole source of income is from a Nevada-licensed marijuana business? (3) Should an involuntary bankruptcy case be dismissed if the alleged debtor owns a substantial Nevada-licensed marijuana assets as wells as assets unrelated to the marijuana business?

Pursuant to 28 U.S.C. § 158(a), Debtor can only appeal the order dismissing his Motion for Dismissal with leave of this Court. See 28 U.S.C. § 158(a)(3). Neither the Bankruptcy Code

nor the Bankruptcy Rules provide a standard for district courts to apply in determining whether to review an appeal from an interlocutory bankruptcy order.  The Bankruptcy Appeal Panel for the Ninth Circuit, however, has analogized the discretion allotted per 28 U.S.C. § 158(a)(3) to the discretion established by 28 U.S.C. § 1292(b). See  *In re Belli*, 268 B.R. 851, 858 (9th Cir. B.A.P. 2001).

Per 28 U.S.C. 1292(b) Review of an interlocutory order is appropriate:

> "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . ."

In considering whether to grant leave to appeal, courts generally "loo[k] to the standards set forth in 28 U.S.C. § 1292(b), which concerns the taking of interlocutory appeals from the district court to the court of appeals." *In re Roderick Timber Co.*, 185 B.R. 601, 604 (B.A.P. 9th Cir. 1995); *see also In re Belli*, 268 B.R. 851, 858 (B.A.P. 9th Cir. 2001). The relevant question under Section 1292(b) is "whether the order on appeal involves a controlling question of law as to which there is a substantial ground for difference of opinion and whether an immediate appeal may materially advance the ultimate termination of the litigation." *Roderick*, 185 B.R. at 604.

Debtor has not met his burden to prove that the order denying Debtor's Motion to Dismiss involved a controlling question of law as to which there is a substantial ground for difference of opinion.

### a) Is the United States Trustee's policy against administering State licensed marijuana assets grounds for dismissal of an involuntary bankruptcy case?

Alleged Debtor's counsel has already conceded at the hearing that the U.S. Trustee's position is not statutory authority or otherwise binding on the court.  There is no substantial ground for a difference of opinion unless Alleged Debtor is arguing that the U.S. Trustee's office has the

authority to create or interpret rules, statutes and laws with binding effect. Furthermore, a representative for the U.S. Trustee's office was present at the hearing of the Motion for Dismissal and made no representation that the U.S. Trustee's office as seeking dismissal of the case or that it was their position was to seek dismissal of any bankruptcy case that involved marijuana assets.

Therefore, this Court made no error of law when it denied Alleged Debtor's motion on the basis that the U.S. Trustee's purported policy on marijuana related cases was not controlling. It is not likely the District Court will come to differing conclusion.

**b) Should an involuntary bankruptcy case be dismissed if the alleged debtor's sole source of income is from a Nevada-licensed marijuana business?**

The Court is reminded that this is a case under chapter 7 and not a case under chapter 11 or 13. There is no plan that proposes funding through the proceeds of a marijuana business. Petitioning Creditors only seek the administration of non-marijuana related assets. Furthermore, Debtor already acknowledges that he has an interest in Cornerstone Nevada, LLC, which itself holds various real estate interests.

Furthermore, there is no rule in Federal Rules of Bankruptcy Procedures or Local Bankruptcy Rules; statute in the Bankruptcy Code; or case law, controlling or not, that requires that a bankruptcy case be dismissed if the debtor's sole source of income is derived from a marijuana business. Debtor heavily relied on documents from the U.S. Trustee's office purported to evidence the Trustee's policy on marijuana related cases, which this Court found were not controlling. Debtor has failed to show that this Court's order involved a controlling question of law. See *In re Novatel Wireless Secs. Litig.*, 2013 U.S. Dist. LEXIS 164725, 2013 WL 6055270 (S.D. Cal. Nov. 19, 2013) (Observing that "a number of other courts have stated the term [question of law] means a 'pure question of law' rather than a mixed question of law and fact or the application of law to a particular set of facts.").

9

Moreover, the cases cited by Alleged Debtor in his Motion to Dismiss do not support his proposition. In *In re Rent-Rite Super Kegs W. Ltd,* 484 B.R. 799, 809 (Bankr. D. Colo. 2012), a chapter 11 case, the court ruled it would dismiss or covert the case to chapter 7, depending on what was in the best interest of the creditors. In *In re Arms Ventures, LLC*, 564 B.R. (Bankr. S.D. Fla. 2017), a Chapter 11 case, the court denied confirmation, but gave the debtor an opportunity to propose a plan funded with non-marijuana income. In *In re Jerry L. Johnson,* 532 B.R. 53 (Bankr. W.D. Mich. 2015), a Chapter 13 case, the debtor's case was no dismissed, but he was enjoined from conducting his marijuana business. The Courts in those cases did not find that a dismissal was automatically required.

As there is no rule, statute or order requiring this Court to dismiss any case involving marijuana assets, this Court cannot be found to have committed an error of law in refusing to do so. Furthermore, there is no substantial ground for a difference of opinion as Alleged Debtor has failed to provide any case law where a Court ruled that all cases involving a marijuana asset must be dismissed. Alleged Debtor is merely interpreting the U.S. Trustee's purported policy position as law and inappropriately applying that "law" to a particular set of facts. Furthermore, any answer to this question would be an impermissible advisory opinion, as the Court pointed out in its order denying the Motion for Dismissal, because Alleged Debtor is not in a Chapter 11 case where he is proposing to fund his plan through the proceeds from the marijuana business. (See Exhibit "2", Page 6 Lines 7-11). It is not likely the District Court will come to differing conclusion.

### c) Should an involuntary bankruptcy case be dismissed if the alleged debtor owns a substantial Nevada-licensed marijuana assets as wells as assets unrelated to the marijuana business?

There is no rule in Federal Rules of Bankruptcy Procedures or Local Bankruptcy Rules; statute in the Bankruptcy Code; or case law, controlling or not, that requires that a bankruptcy case be dismissed if the debtor owns marijuana assets and assets unrelated to the marijuana business. As abovementioned, Alleged Debtor heavily relied on documents from the U.S. Trustee's office purported to evidence the Trustee's policy on marijuana related cases, which this Court found were not controlling.

Furthermore, the cases cited by Alleged Debtor in his Motion to Dismiss do not support his proposition. In *In re Medpoint Mgt. LLC,* 528 B.R. 178 (Bankr. D. Ariz. 2015) and *In re Arena,* 535 B.R. 845 (10th Cir. BAP 2015), both chapter 7 cases, the debtors' cases were dismissed because the Court opined it would be impossible for the chapter 7 Trustee's to liquidate the assets. In those cases, however, the only assets that could be liquidated were marijuana related assets. Moreover, neither of the abovementioned Courts ruled that any case involving marijuana assets had to be dismissed outright.

Here, this Court opined in its Order denying Debtor's Motion to Dismiss that what differentiates this instant case from that of *Arenas* and *Medpoint Mgmt. LLC* is that Debtor has conceded that has a 50% interest in a non-marijuana entity that holds substantial assets. (See Exhibit "2", Page 5 Lines 8-12) Therefore the Court's decision, as it relates to whether a case should be dismissed because a debtor controls marijuana assets, did not turn on an issue of law, but instead on a factual finding that Debtor had other substantial assets that were non-marijuana related.

An appeal for the purposes of reviewing factual determinations is not within the purview of 28 U.S.C. § 1292(b). *In re Moore,* No. 11-cv-00379-DAE-BMK, 2011 U.S. Dist. LEXIS

132772, 2011 WL 5593185, at *3 (D. Haw. Nov. 17, 2011), See *United States v. Adam Bros. Farming, Inc.*, 369 F. Supp. 2d 1180, 1182 (N.D. Cal. 2004) (finding as a threshold matter that per § 1292(b) an appellant's challenge was a question of law rather than one of fact); *Tesco Corp v. Weatherford Intern., Inc.*, 722 F. Supp. 2d 755, 767 (S.D. Tex. 2010) ("[F]indings of fact . . . are inappropriate matters for interlocutory appeal."); *In re Frank Santora Equip. Corp*, 213 B.R. 420, 426 (E.D.N.Y. 1997) ("[A] determination of fact [is] inappropriate for interlocutory review.").

Again, as there is no rule, statute or order requiring this Court to dismiss any case involving marijuana assets, this Court cannot be found to have committed an error of law in refusing to do so. Furthermore, there is no substantial ground for a difference of opinion as Debtor has failed to provide any case law where a Court ruled that all cases involving a marijuana asset must be dismissed. Lastly, this Court's decision was arguably made on the factual determination that Alleged Debtor had other non-marijuana assets that could be liquated and findings of fact are inappropriate matters for interlocutory appeal. It is not likely the District Court will come to differing conclusion.

In summation, Alleged Debtor's first question does not contain a substantial ground for difference of opinion. It would be absurd to believe policy decisions by the U.S. Trustee, as persuasive as they might be, would dictate law. Secondly, to find a controlling question of law in Alleged Debtor's second question, one must inappropriately construe the U.S. Trustee's policy as law and apply that faux law to a particular set of facts, which themselves are questionable. Alleged Debtor's third question is invalid basis for an appeal, because it questions a finding of fact, which is not an appropriate matter for interlocutory appeal. Lastly, it is unlikely that the District Court will even find the appeal of an interlocutory order was properly brought before it. As the District Court is unlikely to even find the appeal reviewable, Alleged Debtor has failed to meet the minimum threshold as to the first factor.

## B)  ALLEGED DEBTOR HAS FAILED TO DEMONSTRATE THAT HE WILL BE IRREPARABLY INJURED ABSENT A STAY.

Alleged Debtor argues that that he will be irreparably harmed if this case goes forward for two reasons.  Firstly, the invasive nature of an involuntary bankruptcy case and secondly, because the inclusion of his interest in his marijuana based business in the bankruptcy estate would endanger his license and thus his livelihood.   Neither of these arguments have merit.

### 1)  THE POSSIBLE INVASIVE NATURE OF AN INVOLUNTARY BANKRUPTCY FILING IS IRRELEVANT.

Whether an involuntary bankruptcy filing has serious consequences, such as public embarrassment or loss of credit standing is irrelevant in a case such as the one at hand.  Debtor admits that Petitioning Creditors have not been paid.  Debtor further admits to having non-bankruptcy related assets, specifically his 50% interest in Cornerstone Nevada, LLC.  The perceived invasive nature of an involuntary bankruptcy is not relevant to the existence of irreparable harm.

### 2)  ALLEGED DEBTOR'S INTEREST IN HIS MARIJUANA BUSINESS AND ANY PROCEEDS DERIVING FROM MARIJUANA RELATED ACTIVITIES ARE NOT PROPERTY OF THE BANKRUPTCY ESTATE AND AS SUCH THE FRUITS OF HIS FEDERALLY ILLEGAL ACTIVITIES REMAIN OUTSIDE THE BANKRUPTCY ESTATE.

As noted by this Court, under 21 U.S.C. §853(c), title to property subject to criminal forfeiture vests in the United States upon the commission of the act giving rise to forfeiture.  Furthermore, under 11 U.S.C. §362(b)(1) the filing of an involuntary case does not stay the commencement or continuation of a criminal action or proceeding against Alleged Debtor.

It is Petitioning Creditor's position that Alleged Debtor's marijuana related assets are not property of the bankruptcy estate, because the commission of the act giving rise to federal

forfeiture vested prior to the filing of this case.  As the marijuana assets would not be part of the bankruptcy estate, Alleged Debtor fears of losing his license are unfounded.

The 9th Circuit has held that a movant has a higher burden regarding the factor of irreparable injury.  *Leiva-Perez v. Holder*, 640d at 968.  Alleged Debtor has the duty to show that irreparable harm is probable.  *Id.* at 965 Here, it is unlikely that a chapter 7 trustee would argue that the marijuana assets were property of the bankruptcy estate and even less likely that a trustee would attempt to administer said assets in any fashion.  In fact Alleged Debtor himself, in his Motion for Stay, asserts that his marijuana assets are not likely to be administered. Therefore, Alleged Debtor has failed to meet the minimum threshold as to the second factor.

### C) ISSUANCE OF A STAY WOULD SUBSTANTIALLY INJURE THE PETITIONING CREDITORS.

Alleged Debtor, though acknowledging that Petitioning Creditors have not been paid, asserts that the Petitioning Creditors would not be substantially injured because there would be nothing that could be administered and liquidated for the benefit of his Creditors.  Alleged Debtor, however, admits to the existence of his 50% percent interest in Cornerstone Nevada, LLC, which itself owns substantial assets.

Alleged Debtor's 50% interest in Cornerstone Nevada, LLC is the pertinent fact.  The fact that he has been removed from his managerial role is irrelevant.   Whether an appointed trustee is able to manage or liquidate the assets of Cornerstone is irrelevant.  What is relevant is that the trustee could sell Alleged Debtor's interest in Cornerstone.  It is Petitioning Creditor's position that the trustee would likely find a buyer.  As to the Quintessa Circle property, it is the Petitioning Creditor's position that a trustee would be very interested in reviewing the transfers involved in that properties purchase.

1   A stay would delay the satisfaction of the debt owed to Petitioning Creditors.  There are

2   assets that could be administered for the benefit of the estate.  Furthermore, as abovementioned,

3   Alleged Debtor's marijuana assets would not be part of the bankruptcy estate, so Alleged

4   Debtor's co-owners and employees would not face any negative repercussions from this

5   involuntary filing.  Therefore, Alleged Debtor has failed to meet the minimum threshold as to the

6   third factor.

7
### D)  THE STAY WOULD BE CONTRARY TO PUBLIC POLICY.
8
9   "There is great public interest in the efficient administration of the bankruptcy system." *In re*

10  *Smith* 397 B.R. 134, 148 (Bankr. D. Nev. 2008).  Alleged Debtor acknowledges that he has not

11  paid Petitioning Creditors.  Alleged Debtor has acknowledged that he has non-marijuana related

12  assets subject to administration.  As such, a stay of the order denying dismissal would only

13  impair the efficient administration of bankruptcy estate.

14  Alleged Debtor seeks to argue that the public benefits from his operation of his marijuana

15  business and presumably argues that the public would be harmed by the cessation of its
16
17  activities.  This argument is both irrelevant and wrong.  Firstly, as abovementioned, Alleged

18  Debtor's marijuana related activities would not become property of the bankruptcy estate.

19  Secondly, arguing to a federal court that the continued running of a business that is in clear

20  violation of federal law would somehow be in the public's interest is absurd.

21

22
### IV. CONCLUSION
23
24  The order denying Alleged Debtor's motion to dismiss is an interlocutory order and not a

25  final judgment, order of decree.  Therefore, it is likely the District Court will find that Alleged

26  Debtor cannot appeal the interlocutory order per 28 U.S.C. §158(a)(1).  Should Alleged

27  Debtor's appeal be entertained pursuant to §158(a)(3), the District Court is likely to deny it as he

28  has failed to show there is a controlling question of law subject to difference in opinion.  Debtor

is merely applying the U.S. Trustee's policy, as law, to various sets of facts, which is not an appropriate matter for interlocutory appeal and thus Alleged Debtor's appeal will not succeed on the merits. Furthermore, Debtor has failed to prove even the possibility of irreparable harm, because Debtor's marijuana assets will not be property of the bankruptcy estate and Alleged Debtor himself asserted that the trustee would be unable to administer them. Moreover, Alleged Debtor has admitted to the existence of non-marijuana assets, which could be administered by a trustee for the benefit of the Petitioning Creditors. Should a stay be granted, Petitioning Creditors would be unduly denied timely satisfaction of their legitimate debt. Lastly, a stay would provide no benefit to public interest, but instead would run afoul of the efficient administration of the bankruptcy system. Therefore, Petitioning Creditors respectfully request that this Court deny Alleged Debtor's Motion for Stay.

Respectfully submitted,

Dated: February 26, 2019                THE LAW OFFICES OF LANGLEY AND CHANG

By:  /s/ Michael Smith
     MICHAEL SMITH
     Attorney for Petitioning Creditors

# EXHIBIT "1"

Lenard E. Schwartzer, Esq., NV Bar No. 399
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas NV  89146-5308
Telephone:    (702) 228-7590
Facsimile:    (702) 892-0122
E-Mail:    bkfilings@s-mlaw.com

*Attorneys for Howard Misle*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>HOWARD MISLE,<br><br>                     Alleged Debtor. | Case No. BK-S-18-15705-leb<br><br>Chapter 11 (Involuntary)<br><br>**MOTION FOR DISMISSAL OF INVOLUNTARY CASE**<br><br>Hearing Date:  December 17, 2018<br>Hearing Time:  1:30 p.m. |

Howard Misle (the "Alleged Debtor"), by and through his counsel, Schwartzer & McPherson Law Firm, requests entry of an order for dismissal of this involuntary Chapter 7 case on the grounds that the Alleged Debtor's current income comes from management of a marijuana business and such assets cannot be administered by a Chapter 7 Panel Trustee or the Bankruptcy Court .

## I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.  CASE BACKGROUND

1.    On September 24, 2018, 5 alleged creditors of the Alleged Debtor, filed an involuntary petition under Chapter 7 the Bankruptcy Code against the Alleged Debtor in Las Vegas, Nevada, thereby commencing bankruptcy case number 18-15705-leb.  On October 18, 2018, an Amended Summons was issued.

2.    As of the date of this Motion, the Petition and Summons have not been served on

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    the Alleged Debtor.

2        3.      The Alleged Debtor is employed by the manager of a Nevada licensed marijuana

3    production facility located in Pahrump, Nevada.  Since the beginning of this year, his only source

4    of income has come from such management services to a marijuana business.

5        4.      The Alleged Debtor is the manager of several entities which are engaged in the

6    Nevada licensed marijuana business. In addition, the Alleged Debtor is the manager of entities

7    which are engaged in other businesses.

8        5.      Pursuant to the rules enunciated by the Office for U.S. Trustees, Chapter 7 Trustees

9    may not administer marijuana business or assets derived from marijuana businesses and such cases

10   should be dismissed.

### III.  MEMORANDUM OF LAW

11

12       Bankruptcy Code §707(a) provides "The court may dismiss a case under this chapter only

13   after notice and a hearing and only for cause…"

14   **1. Dismissal for "cause" under § 707(a)**

15       A bankruptcy court may dismiss a chapter 7 case if the movant establishes

16   "cause," which includes such conduct as (1) unreasonable delay in prosecuting the
     case, (2) failure to pay statutory fees and charges, or (3) failure to file financial

17   disclosures. § 707(a)(1)-(3). Section 707(a) does not define "cause," but the Ninth
     Circuit has recognized that "cause" for dismissal is not limited to the three

18   examples in the statute. *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1191 (9th
     Cir.2000).

19

20   *In re Franco*, 2016 WL 3227154, at *3 (B.A.P. 9th Cir. June 2, 2016).

21   **Dismissal of Marijuana Related Bankruptcy Case**

22       The Office for United States Trustees ("UST") prohibits marijuana businesses and the

23   proceeds from marijuana businesses from being administered in bankruptcy cases.

24       It is the policy of the United States Trustee Program that United States Trustees

25   shall move to dismiss or object in all cases involving marijuana assets on grounds
     that such assets may not be administered under the Bankruptcy Code even if

26   trustees or other parties object on the same or different grounds.
     See letter dated from Clifford White, Director, dated April 26, 2017, a copy of which is

27   attached as **Exhibit "A"**.  This position was reiterated in December by the UST in a memo

28

1  entitled "Why Marijuana Assets May Not Be Administered in Bankruptcy", a copy of

2  which is attached as **Exhibit "B"**.  The memo states:

> The USTP's response to marijuana-related bankruptcy filings is guided by
> two straightforward and uncontroversial principles. First, the bankruptcy system
> may not be used as an instrument in the ongoing commission of a crime and
> reorganization plans that permit or require continued illegal activity may not be
> confirmed. Second, bankruptcy trustees and other estate fiduciaries should not be
> required to administer assets if doing so would cause them to violate federal
> criminal law.
>
> The USTP's policy of seeking dismissal of marijuana bankruptcy cases that
> cannot lawfully be administered is not a new one, but rather it is a policy that has
> been applied consistently over two presidential administrations and under three
> Attorneys General. Nor are these concerns unique to marijuana. These same
> principles would also guide the USTP's response in a case involving any other type
> of ongoing criminal conduct or administration of illegal property.

Courts dismiss bankruptcy cases to the extent estate assets are used for or generated by the

operation of a federally prohibited marijuana business. *Arenas v. U.S. Tr. (In re Arenas)*, 535 B.R.

845, 852 (10th Cir. BAP 2015); *In re Medpoint Mgmt., LLC*, 528 B.R. 178, 184–85 (Bankr. D.

Ariz. 2015), *vacated in part, Medpoint Mgmt., LLC v. Jensen (In re Medpoint Mgmt., LLC)*, BAP

No. AZ–15–1130–KuJaJu, 2016 WL 3251581 (9th Cir. BAP Jun. 3, 2016); *In re Johnson*, 532

B.R. 53, 56–57 (Bankr. W.D. Mich. 2015); *In re Rent–Rite Super Kegs W., Ltd.*, 484 B.R. 799,

810 (Bankr. D. Colo. 2012).

A recent analysis of these cases was made by the Bankruptcy Court in Florida as follows:

> In *In re Rent–Rite Super Kegs W. Ltd.*, 484 B.R. 799, 809 (Bankr. D. Colo.
> 2012), the court ruled it would dismiss or convert the debtor's chapter 11 case
> because the debtor derived 25% of its revenues from leasing space to a tenant who
> was engaged in growing marijuana in a business legal under state law, but which
> business did not have DEA approval. The court noted that even if there were no
> good faith requirement in section 1129, the court could not confirm a plan that
> relied on income derived from a criminal activity.
>
> In *In re Jerry L. Johnson*, 532 B.R. 53 (Bankr. W.D. Mich. 2015) the U.S.
> Trustee filed a motion to dismiss the chapter 13 case of a debtor whose income was
> derived partially from the cultivation and sale of marijuana to three patients to
> whom he also provided caregiver services. The debtor, who was licensed to grow
> and sell marijuana under state law grew the marijuana in his home. The debtor also
> had social security income which income he testified was the source of his chapter
> 13 payments to the chapter 13 trustee. The court held that, notwithstanding that the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

debtor's payments were from an "untainted" source, the debtor's continuing operation of a marijuana business, even if the income were segregated, would require the court, the trustee, and even the debtor (who under chapter 13 retains property of the estate)[19] to violate federal law, which they could not. Because the debtor had legitimate reasons to be in bankruptcy, the court said rather than dismiss the case the debtor could stop operating the marijuana business; otherwise, the case would have to be dismissed.

In *In re Arenas*, 535 B.R. 845 (10th Cir. BAP 2015), a chapter 7 case was filed by a state-licensed marijuana grower and his wife, whose income also included lease income from a state licensed marijuana dispensary. The U.S. Trustee filed a motion to dismiss the case on the basis that the chapter 7 trustee could not administer the assets—it would be a violation of federal law to which the trustee is subject. In response the debtors filed a motion to convert the case to a case under chapter 13 which motion the bankruptcy court denied. The bankruptcy court ruled that because the debtors' plan would have been funded from an activity illegal under Federal law—the growing and dispensing of medical marijuana—it was not a plan "proposed in good faith and not by any means forbidden by law" a confirmation requirement under 11 U.S.C. § 1325(a)(3). Since the debtors could not confirm a plan without the marijuana income, the debtors could not qualify to be debtors in a chapter 13 case. The court was also concerned because confirming the plan would require the Chapter 13 Trustee to violate federal criminal law to administer the plan payments. The bankruptcy court then granted the U.S. Trustee's motion to dismiss. The B.A.P. affirmed both the bankruptcy court's decision to deny the debtors' motion to convert their case to chapter 13 and to grant the U.S. Trustee's motion to dismiss. *Id.* at 855. *See also In re McGinnis*, 453 B.R. 770 (Bankr. D. Or. 2011) (holding that a chapter 13 plan was unconfirmable because it relied on a future change to Oregon medical marijuana law and it violated federal law).

Even if the Debtor was otherwise of "pure mind and heart" when this case was filed, the very fact that the Amended Plan is based on income derived from the sale of marijuana can be deemed "bad faith". In *Arenas* the B.A.P. affirmed the bankruptcy court's finding that, notwithstanding that the debtors appeared "to be sincere and credible" and "their motives in seeking bankruptcy relief were not improper", nonetheless, "[i]t is objectively unreasonable for them to seek Chapter 13 relief whether their intentions are kindly or not" and, therefore, the B.A.P. upheld the bankruptcy court's finding of bad faith. 535 B.R. at 852–53. *Accord In re Jerry L. Johnson*, 532 B.R. at 53.

*Arm Ventures, LLC*, 564 B.R. 77, 84–85 (Bankr. S.D. Fla. 2017) (footnotes omitted).

*In re Medpoint Mgt., LLC*, 528 B.R. 178 (Bankr. D. Ariz. 2015), *reversed in part on other issues*, 2016 WL 3251581 (9th Cir. BAP 2016), **the involuntary petition** against a company involved in the (legal under state law) medical marijuana business, was dismissed because the alleged debtor was engaged in activity illegal under federal law. The holding—the cultivation and

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  sale of marijuana is illegal under federal law and therefore the federal bankruptcy law and the

2  federal courts are not available to any person engaged in that business.

3       The Court will not enter an order for relief which would then result in the appointed
     chapter 7 trustee necessarily violating federal law (the CSA) in carrying out his or

4       her duties under the Code. The dual risks of forfeiture of Medpoint's assets and a
     trustee's inevitable violation of the CSA in administration of a Medpoint chapter 7

5       estate constitute cause for this Court to dismiss Petitioning Creditors' involuntary

6       Petition under section 707(a). The Court grants Medpoint's Motion.

7  *In re Medpoint Mgmt., LLC*, 528 B.R. 178, 186 (Bankr. D. Ariz. 2015), *reversed in part on other*

8  *issues,* 2016 WL 3251581 (B.A.P. 9th Cir. June 3, 2016).

9       This is not a case of a 90 year old debtor who lives in a nursing home who leases a small

10  portion of a strip mall to a marijuana dispensary such as in *In re Olson*, 2018 WL 989263, at *6

11  (B.A.P. 9th Cir. Feb. 5, 2018), where there might be a question whether marijuana assets were

12  knowingly received or if the voluntary debtor was acting in good faith. This is a case in which the

13  Alleged Debtor's income comes from the operation of a Nevada licensed marijuana business.

<u><strong>CONCLUSION</strong></u>

15       Based upon the foregoing, the Trustee requests that the Court enter an order dismissing this

16  involuntary bankruptcy case.

17       A proposed form of Order is attached to this Motion as **Exhibit "C."**

18       Dated: November 13, 2018.

20            <u>/s/Lenard E. Schwartzer</u>
          Lenard E. Schwartzer, Esq.

21            Schwartzer & McPherson Law Firm
          2850 S. Jones, Blvd., Suite 1

22            Las Vegas, NV 89146
          Tel:  (702) 228-7590

23            *Attorneys for Howard Misle*

24

25

26

27

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 • Fax: (702) 892-0122

# EXHIBIT "A"



**U.S. Department of Justice**

Executive Office for United States Trustees

---

*Office of the Director*                                     *Washington, DC  20530*

April 26, 2017

Dear Chapter 7 and Chapter 13 Trustees:

     Your role in administering bankruptcy estates is indispensable to the effective and lawful functioning of the entire bankruptcy system.  I know that in the past few years, the United States Trustees have reached out to you to ensure that we are informed about all cases assigned to you that involve marijuana assets, which are proscribed under federal law and may not be administered under the Bankruptcy Code.[1]  This directive pertains even in cases in which such assets are not illegal under state law.

     In recent months, we have noticed an increase in the number of bankruptcy cases involving marijuana assets.   This is to reiterate and emphasize the importance of prompt notification to your United States Trustee whenever you uncover a marijuana asset in a case assigned to you.   Our goal is to ensure that trustees are not placed in the untenable position of violating federal law by liquidating, receiving proceeds from, or in any way administering marijuana assets.   In some cases, trustees move to dismiss or object to a chapter 13 plan confirmation on grounds unrelated to the controlled substance.   You should continue to file any motions or objections you deem appropriate.   It is the policy of the United States Trustee Program that United States Trustees shall move to dismiss or object in all cases involving marijuana assets on grounds that such assets may not be administered under the Bankruptcy Code even if trustees or other parties object on the same or different grounds.

     I appreciate your continued and heightened attention to our directive for prompt notification of all cases involving marijuana assets.  I am grateful for all the work you do every day to uphold the integrity of the bankruptcy system and to satisfy the highest fiduciary standards. Your accomplishments, while not always heralded, are much appreciated.

                 Sincerely yours,

                 Clifford J. White III
                 Director

cc:    Deputy Director/General Counsel
       United States Trustees
       Assistant United States Trustees

---

[1] Cases involving marijuana assets include cases in which the marijuana assets would leave the estate through exemption or abandonment.

# EXHIBIT "B"

# Why Marijuana Assets May Not Be Administered in Bankruptcy

*Written by:*
*Clifford J. White III*
*Director, Executive Office for U.S. Trustees*
*Washington, DC*

*John Sheahan*
*Trial Attorney, Executive Office for U.S. Trustees*
*Washington, DC*

Marijuana continues to be regulated by Congress as a dangerous drug, and as the Supreme Court has recognized, the federal prohibition of marijuana takes precedence over state laws to the contrary.[1] The primacy of federal law over state law is hardly a novel proposition and has been the rule since the ratification of the Constitution. Thus, whenever a marijuana business files for bankruptcy relief, a threshold question is whether the debtor can be granted relief consistent with the Bankruptcy Code and other federal law. If the answer to that question is no, the United States Trustee Program (USTP), in its role as the watchdog of the bankruptcy system, will move to dismiss.

Illegal enterprises simply do not come through the doors of the bankruptcy courthouse seeking help to further their criminal activities. To obtain bankruptcy relief, some may try to hide the nature of their business or income, but bankruptcy courts require full financial disclosure and are not a hospitable forum for continuing a fraudulent or criminal scheme.

Marijuana businesses are a unique and unprecedented exception to this rule because they often involve companies that openly propose to continue their illegal activity during and after the bankruptcy. Those cases present a challenge to the bankruptcy system because they generally involve assets that are illegal even to possess. In contrast to other types of cases involving illegal businesses, in which the criminal activity has already terminated and the principal concern of the bankruptcy court is to resolve competing claims by victims for compensation, a marijuana bankruptcy case may involve a company that not only is continuing in its business, but is even seeking the affirmative assistance of the bankruptcy court

---

[1] Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.* (the "CSA"); *Gonzales v. Raich*, 545 U.S. 1, 12 (2005).

in order to reorganize its balance sheet and thereby facilitate its violations of the law going forward.

The USTP's response to marijuana-related bankruptcy filings is guided by two straightforward and uncontroversial principles. First, the bankruptcy system may not be used as an instrument in the ongoing commission of a crime and reorganization plans that permit or require continued illegal activity may not be confirmed. Second, bankruptcy trustees and other estate fiduciaries should not be required to administer assets if doing so would cause them to violate federal criminal law.

The USTP's policy of seeking dismissal of marijuana bankruptcy cases that cannot lawfully be administered is not a new one, but rather it is a policy that has been applied consistently over two presidential administrations and under three Attorneys General. Nor are these concerns unique to marijuana. These same principles would also guide the USTP's response in a case involving any other type of ongoing criminal conduct or administration of illegal property.

Although a recent ABI Journal article[2] takes the USTP to task for its marijuana enforcement efforts, it is noteworthy that the author fully agrees with the USTP's position as to the first of the two principles described above and appears to agree to a significant extent with the second. As the author concedes, "it hardly needs explanation that a bankruptcy court should not supervise an ongoing criminal enterprise regardless of its status under state law."[3] As to the second principle, "[i]t would obviously violate federal law for the trustee to sell marijuana."[4]

Given these concessions, the author's disagreement with the USTP's position would appear to be limited to a fairly narrow range of cases – those where administration of the estate would not require the trustee to sell marijuana (but would require the trustee to administer other marijuana-derived property), or where the debtor is a "downstream" participant in a marijuana business, such as a lessor of a building used for a marijuana dispensary.[5]

Yet under the CSA, there is no distinction between the seller or the grower of marijuana and the supposedly more "downstream" participants whom the article proposes to protect: all are in violation of federal criminal law. In particular,

---

[2] Steven J. Boyajian, "Just Say No to Drugs? Creditors Not Getting a Fair Shake When Marijuana-Related Cases Are Dismissed," *ABI Journal*, September 2017, at 24.
[3] *Id.* at 25.
[4] *Id.*
[5] *Id.* at 74.

section 856 of the CSA specifically prohibits knowingly renting, managing, or using property "for the purpose of manufacturing, distributing, or using any controlled substance;" section 863 of the CSA makes it a crime to sell or offer for sale any drug paraphernalia – which is defined to include, among other things, "equipment, product, or material of any kind which is primarily intended or designed for use" in manufacturing a controlled substance; and section 855 provides for a fine against a person "who derives profits or proceeds from an offense [of the CSA]."[6] Thus, not only would a trustee who offers marijuana for sale violate the law but so, too, would a trustee who liquidated the fertilizer or equipment used to grow marijuana, who collected rent from a marijuana business tenant, or who sought to collect the profits of a marijuana investment.

Although cases involving illicit proceeds of Ponzi schemes and other criminal activities – seen in such notorious cases as Enron, Dreier LLP, and Madoff – are administered in bankruptcy, they deal with the aftermath of fraud, usually after individual wrongdoers had been removed from the business. Such cases are wholly inapposite analogies to a marijuana case where the illegal activity is still continuing through the bankruptcy administration process and where bankruptcy relief may allow the company to expand its violations of law in the future. Nor do any of those cases involve proposed chapter 11 and 13 plans where the feasibility of the plan itself is directly premised on the continued receipt of profits from an illegal enterprise. And none of them requires the courts or trustees to deal with property of the kind described in the CSA, for which mere possession is a federal crime.

Similarly, although the author cites two decades-old decisions in support of his claim that "courts have not always shied away from handling marijuana-related bankruptcies,"[7] it is noteworthy that neither of those decisions involved active marijuana operations or would have required a bankruptcy trustee to administer any illegal marijuana assets.[8] Both *Chapman* and *Kurth Ranch* involved bankruptcy cases that were filed *after* law enforcement had arrested and seized the assets of marijuana growers. The legal issues raised by the current wave of marijuana filings were simply not present in those cases – neither case involved an ongoing violation of law, and in neither case were there any marijuana assets to be administered, because all illegal assets had been seized and disposed of prepetition.

Finally, the article suggests that the "ongoing conflict over marijuana policy" is one that should take place outside the bankruptcy system. The USTP

---

[6] Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*

[7] *Id.* at 25.

[8] *See Dep't of Revenue v. Kurth Ranch*, 511 U.S. 767 (1994); *In re Chapman*, 264 B.R. 565 (B.A.P. 2001).

agrees. But that does not mean that the USTP or the courts should turn a blind eye to bankruptcy filings by marijuana businesses. Rather than make its own marijuana policy, the USTP will continue to enforce the legislative judgment of Congress by preventing the bankruptcy system from being used for purposes that Congress has determined are illegal.

# EXHIBIT "C"

1

2

3

4

5

6

Lenard E. Schwartzer, Esq., NV Bar No. 399
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas NV  89146-5308
Telephone:    (702) 228-7590
Facsimile:    (702) 892-0122
E-Mail:    bkfilings@s-mlaw.com

*Attorneys for Howard Misle*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re: | Case No. BK-S-18-15705-leb |
|---|---|
| HOWARD MISLE, | Chapter 11 (Involuntary) |
| Alleged Debtor. | **ORDER GRANTING MOTION FOR DISMISSAL OF INVOLUNTARY CASE** |
| | Hearing Date:  December 17, 2018<br>Hearing Time:  1:30 p.m. |

The Alleged Debtor's Motion for Dismissal of Involuntary Case [ECF ____], having come

before this Court after service on all the petitioning creditors; Howard Misle (the "Alleged

Debtor"), being represented by Lenard E. Schwartzer, Esq. of the Schwartzer & McPherson Law

Firm and other appearances having been made on the records;  the Court having reviewed the

Motion and any oppositions and having made its findings of fact and conclusions of law on the

record pursuant to Bankruptcy Rule 7052 and F.R.Civ.P. Rule 52, it is

/ / /

/ / /

/ / /

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    ORDERED that the involuntary petition be, and hereby is, dismissed.

2

3    Prepared by:

4    /s/Lenard E. Schwartzer
     Lenard E. Schwartzer, Esq.
5    Schwartzer & McPherson Law Firm
     2850 S. Jones, Blvd., Suite 1
6    Las Vegas, NV 89146
     Tel: (702) 228-7590
7    *Counsel for Howard Misle*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Page 2 of 2

EXHIBIT "2"



*Bruce T Beesley*

_____

Honorable Bruce T. Beesley
United States Bankruptcy Judge

Entered on Docket
January 02, 2019

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

| | |
|---|---|
| In re: | ) Case No.: 18-15705-btb |
| | ) |
| HOWARD MISLE, | ) Chapter 7 Involuntary |
| | ) |
| Alleged Debtor. | ) |
| | ) |
| | ) Date: December 17, 2018 |
| | ) Time: 1:30 p.m. |

**ORDER DENYING MOTION FOR DISMISSAL OF INVOLUNTARY CASE[1]**

On September 24, 2018, an involuntary chapter 7 petition was filed against Howard

Misle ("Alleged Debtor"). (ECF No. 1). On November 2, 2018, the Alleged Debtor was served

with the summons. (ECF No. 30). On November 14, 2018, the Alleged Debtor filed a Motion

for Dismissal of Involuntary Case (ECF No. 31) ("Motion to Dismiss") seeking dismissal of this

involuntary chapter 7 under Section 707(a) because of his involvement in marijuana-related

businesses which are illegal under federal law but presumably legal under Nevada law.[2]  The

court heard the matter on December 17, 2018, and, at the insistence of the Alleged Debtor's

counsel, writes this Order to further clarify its decision at the conclusion of the hearing to deny

_____

[1] All references to "ECF No." are to the numbers assigned to the documents filed in this
bankruptcy case as they appear on the bankruptcy docket maintained by the Clerk of Court.  All
references to "Section" shall be to provisions of the Bankruptcy Code, 11 U.S.C. §§ 101-1532,
unless otherwise indicated.

[2] Recreational marijuana is legal under Nevada law, though the court makes no finding of
fact or conclusion of law regarding the legality of Debtors' marijuana-related business interests.

1  the Motion to Dismiss.  In reaching this conclusion, the court has reviewed and considered all

2  pleadings and exhibits filed in support of and against the Motion to Dismiss.  (ECF Nos. 31-32,

3  37-39, 41, 44, 52-53).[3]  The court has also reviewed and considered all legal authority cited in

4  the pleadings and uncovered during the court's independent research into this novel issue.  *See*

5  Olson v. Van Meter (In re Olson), 2018 WL 989263, at *5 (B.A.P. 9th Cir. Feb. 5, 2018) ("The

6  case law addressing facts such as those presented here is sparse, and there is no controlling

7  authority in the Ninth Circuit.").[4]

8      Section 707(a) states that "[t]he court may dismiss a case under this chapter only after

9  notice and a hearing and only for cause ...."  The Alleged Debtor contends that "cause" exists

10  because his only source of income comes from Abram Texas Management, LLC ... which

11  manages marijuana grow facilities in Nye County, Nevada."  (ECF No. 53, ¶ 2).  He also submits

12  that he "own[s] a beneficial interest in a twenty-five percent (25%) membership interest in and I

13  am the manager of a company which owns a license to cultivate marijuana in Nye County,

14  Nevada."  (ECF No. 53, ¶ 4).[5]  The Alleged Debtor therefore contends that "cause" exists under

15

16      [3] On December 5, 2018, the petitioning creditors filed a motion seeking to strike the
Alleged Debtor's initial declaration and the exhibits attached to the Motion to Dismiss.  (ECF

17  No. 47).  However, this motion was noticed for hearing on January 3, 2019, and at the December
17 hearing, the petitioning creditors did not address the motion to strike or otherwise ask the

18  court to strike any of the Alleged Debtor's exhibits or declarations.  For all these reasons, and in
light of this Order, the court deems the motion to strike as moot and hereby vacates the January

19  3, 2019, hearing on the same.  For the avoidance of doubt, the court has reviewed and considered

20  the materials the petitioning creditors sought to strike.

21      [4] On December 3, 2018, however, the Ninth Circuit Court of Appeals heard oral

22  argument in Garvin v. Cook Investments NW, SPNWY, LLC, Case No. 18-35119, involving the
U.S. Trustee's appeal of a confirmed plan which, although funded by non-marijuana income,

23  involved a debtor who previously rejected a lease with a marijuana-related business entity.  *See*
Garvin v. Cook Investments NW, SPNWY, LLC (In re Cook Investments NW, SPNWY, LLC),

24  2018 WL 1470848 (W.D. Wash. March 26, 2018).  The Ninth Circuit has not yet issued a ruling.

25      [5] The Alleged Debtor's 50% interest in Cornerstone Nevada, LLC, a non-marijuana

26  related entity that his counsel described as having substantial assets, was also discussed at the
hearing.  Petitioning creditors also directed the court's attention during the hearing to portions of

27  the Alleged Debtor's deposition transcript in which he testified as to his sale of, and potential
interest in, other substantial non-marijuana related assets only a few years prior to the filing of

28  this involuntary chapter 7.

Section 707(a) because, in pertinent part, a chapter 7 trustee will not be able to administer his non-exempt marijuana assets. The Alleged Debtor further argues that if the case is converted to chapter 11, he will not be able to confirm a plan funded by his marijuana-related income.

In support of his position, the Alleged Debtor relies on a letter ("UST Letter") and a memo ("UST Memo") from the Executive Office for United States Trustees attached as exhibits to his Motion to Dismiss. (ECF No. 31, Exhs. A-B). Yet, as counsel conceded at the hearing, the U.S. Trustee's position is not statutory authority or otherwise binding on this court, which is the entity tasked with the responsibility of interpreting these difficult issues. And although the court finds the UST Letter and the UST Memo to be persuasive, it does not interpret either as suggesting the imposition of a per se rule mandating dismissal of all bankruptcy cases in which marijuana assets may be involved.[6]

Specifically, the UST Letter states that "[o]ur goal is to ensure that trustees are not placed in the untenable position of violating federal law by liquidating, receiving proceeds from, or in any way administering marijuana assets." The UST Memo similarly states that "bankruptcy trustees and other estate fiduciaries should not be required to administer assets if doing so would cause them to violate federal criminal law." The court agrees with these statements, but this agreement does not signal the automatic death knell of all cases in which marijuana is involved.[7] See In re Olson, 2018 WL 989263, at *7 ("Although debtors connected to marijuana distribution cannot expect to violate federal law in their bankruptcy case, the presence of marijuana near the

---

[6] Indeed, such a per se rule would be difficult to apply in practice. As previously noted, recreational marijuana is legal in Nevada, and trustees in this district have presumably administered cases in which individual debtors possessed and/or used marijuana during the bankruptcy case. In such circumstances, is the court required to dismiss every individual bankruptcy case upon the debtor's admission that he or she possesses and/or uses marijuana for personal use? That is the natural progression of the Alleged Debtor's proposed per se rule and would only serve to invite abuse by opportunistic debtors who could simply use this mandatory "get out of bankruptcy" card at any time they see fit.

[7] Indeed, the United States Bankruptcy Appellate Panel of the Ninth Circuit previously reversed this court because they, in essence, found that the court applied a per se rule under analogous circumstances, instead of making detailed findings of fact and conclusions of law. See Olson v. Van Meter (In re Olson), 2018 WL 989263 (B.A.P. 9th Cir. Feb. 5, 2018).

1   case should not cause mandatory dismissal.") (Tighe, J., concurring); Arenas v. U.S. Trustee (In

2   re Arenas), 535 B.R. 845, 852 (B.A.P. 10th Cir. 2015) (in a case cited by the Alleged Debtor, the

3   court rejected the debtor-appellant's argument that the bankruptcy court applied a per se rule in

4   denying confirmation of a chapter 13 plan in which the debtors leased space to marijuana-related

5   businesses).

6           Indeed, although not discussed at the hearing, the court's independent research reflects

7   that marijuana-related assets are arguably excluded from property of the estate, thereby

8   potentially eliminating the concerns expressed in the UST Letter and the UST Memo.

9   Specifically, "[c]riminal forfeiture operates *in personam* against a defendant to divest him of his

10  title to proceeds from his unlawful activity as a consequence of his criminal conviction." U.S. v.

11  Lazarenko, 476 F.3d 642, 647 (9th Cir. 2007) (emphasis in original).[8]  Under 21 U.S.C. §

12  853(c)[9], title to property subject to criminal forfeiture "vests in the United States upon the

13  commission of the act giving rise to forfeiture under this section."  Consequently, at the time a

14  debtor with marijuana-related income or assets files bankruptcy, such assets are arguably

15  automatically excluded from property of the estate under 21 U.S.C. § 853(c).  *See* U.S. v. French,

16  822 F. Supp. 2d 615, 619 (E.D. Va. 2011) ("[B]y operation of the 'relation back' doctrine [and

17  21 U.S.C. § 853(c)], French's forfeited property vested in the United States at the time of his

18  criminal acts, *i.e.* in 2005—six years prior to the creation of the bankruptcy estate.  Upon her

19  appointment, the Trustee merely stands in the shoes of the debtor as a bona fide purchaser.

20  Because French lacked an ownership interest in the forfeited property at the creation of his

21  bankruptcy estate, the Trustee also lacks an ownership interest and thus, lacks standing to

22

23

24

25      [8] "Criminal forfeiture actions are excepted from the automatic stay under the plain
    language of § 362(b)(1) which specifically excepts criminal proceedings 'against the debtor.'"
26  State of Ariz. v. Rodriguez (In re Rodriguez), 2008 WL 8448043, at *3 (B.A.P. 9th Cir. July 10,
    2008).
27      [9] This section is part of the Controlled Substances Act discussed in the cases cited by the
28  parties that makes it a crime to, in pertinent part, participate in the growth or sale of marijuana.

1   challenge the forfeiture order.").[10]

2        Additionally, the only case cited by the parties or otherwise found by the court involving

3   the dismissal of an involuntary chapter 7 is distinguishable, in pertinent part, because the U.S.

4   Trustee participated in the dismissal hearing before that court and "was not convinced that [the

5   alleged debtor] had any legal, non-marijuana assets that a trustee could lawfully administer." In

6   re Medpoint Mgmt., LLC, 528 B.R. 178, 184 (Bankr. D. Ariz. 2015), vacated in part on other

7   grounds, Medpoint Mgmt, LLC v. Jensen (In re Medpoint Mgmt., LLC, 2016 WL 3251581

8   (B.A.P. 9th Cir. June 3, 2016). In this case, the Alleged Debtor concedes that he has a 50%

9   interest in a non-marijuana entity that holds substantial assets,[11] his deposition testimony reflects

10   his potential interest in other substantial non-marijuana assets only years prior to the filing of this

11   involuntary petition, and the court has not had the benefit of the U.S. Trustee's position in this

12   case. Accordingly, it is premature for this court and the Alleged Debtor to presume the U.S.

13   Trustee will seek dismissal under the UST Letter, the UST Memo, or the caselaw before the U.S.

14   Trustee has even made an appearance. *See* In re Rent-Rite Super Kegs. West Ltd., 484 B.R. 799,

15   810-811 (Bankr. D. Colo. 2012) (although the court found cause to dismiss or convert a

16   voluntary chapter 11 under Section 1112, the court scheduled a further hearing to discuss, in

17   pertinent part, whether sufficient non-marijuana assets could be distributed in a chapter 7 if the

18   court converted the case).

19        Counsel for the Alleged Debtor further argued at the hearing that the Alleged Debtor will

20   not be able to confirm a chapter 11 plan funded by his marijuana-related income. In this respect,

21   the UST Memo states that "the bankruptcy system may not be used as an instrument in the

---

22     [10] The court is not making a conclusion of law that such is the case but is merely pointing

23   out that the issue is not as clear cut as the Alleged Debtor would have the court believe, thereby
further undercutting the imposition of a per se rule.

24

25     [11] The Alleged Debtor's counsel argued at the hearing that this asset will likely provide
no benefit to creditors because it is managed by the Alleged Debtor's ex-wife, who may never

26   make a distribution to the Alleged Debtor. *See* In re McKay, 2013 WL 66263 (Bankr. D. Idaho

27   Jan 4, 2013) ("[A]rguments and statements of counsel are not evidence.") (quotations and
citations omitted). The Alleged Debtor did not support this argument with a declaration made

28   under penalty of perjury, and the Alleged Debtor has not yet been subjected to a Section 341
meeting to fully vet this representation.

5

1    ongoing commission of a crime and reorganization plans that permit or require continued illegal

2    activity may not be confirmed." Again, the court agrees with this statement but again does not

3    believe that such agreement requires a mandatory death knell of all cases involving marijuana

4    assets. *See* In re Arm Ventures, LLC, 564 B.R. 77 (Bankr. S.D. Fla. 2017) (denying

5    confirmation of a proposed chapter 11 plan funded with marijuana-related income but giving the

6    debtor the opportunity to propose a plan funded with non-marijuana income); In re McGinnis,

7    453 B.R. 770 (Bankr. D. Or. 2011) (same in the context of a chapter 13). Additionally, accepting

8    the Alleged Debtor's argument would require this court to give an impermissible advisory

9    opinion that assumes the court will convert the case to chapter 11 for an Alleged Debtor who

10    adamantly contends that he will not be able to confirm a plan, and presumably has no desire to

11    do so. *See* Marrama v. Citizens Bank of Mass., 549 U.S. 365 (2007).

12       For all these reasons,

13       **IT IS THEREFORE ORDERED** that the Alleged Debtor's Motion to Dismiss is

14    denied. The Alleged Debtor shall file his answer to the involuntary petition within fourteen (14)

15    calendar days after entry of this order, absent which the court will enter an order for relief

16    pursuant to Section 303(h).

17       **IT IS SO ORDERED.**

18    Copies sent to all parties via CM/ECF ELECTRONIC FILING.

19                  # # #

20

21

22

23

24

25

26

27

28

EXHIBIT "3"

1 | Lenard E. Schwartzer, Esq.
Nevada Bar No. 0399
2 | Schwartzer & McPherson Law Firm
3 | 2850 S. Jones Blvd., Suite 1
Las Vegas, NV 89146
4 | Telephone: (702) 228-7590
Facsimile: (702) 892-0122
5 | E-mail: bkfilings@s-mlaw.com
*Attorneys for Alleged Debtor*
6 |

7 | **UNITED STATES BANKRUPTCY COURT**

8 | **DISTRICT OF NEVADA**

9 | In re:                                            Case No. 18-15705-btb

10 | HOWARD MISLE                                Involuntary Chapter 7

11 |                          Alleged Debtor.    **ANSWER**

12 |       Howard Misle answers the Involuntary Petition and alleges:

13 |       1.      Chapter of the Bankruptcy Code: Admit

14 |       2.      Debtor's Name: Admit

15 |       3.      Other names: No allegation made

16 |       4.      Social Security Number: No allegation made

17 |       5.      Employer: No allegation made

18 |       6.      Address: Admit as mailing address

19 |       7.      Type of Business: Admit

20 |       8.      Type of Debt: Admit

21 |       9.      Other bankruptcy cases: Admit

22 |       10.     Venue: Admit

23 |       11.     Allegations: Deny

24 |       12.     Transfers of Claims: Admit

25 |       13.     Petitioner's claims: Admit

26 | ///

27 | ///

28 |

Answer to Involuntary Petition

1

1

Affirmative Defenses:

2
3

Debtor is not eligible for relief under the Bankruptcy Code because a substantial amount of
his assets and income are based on Nevada-licenses medical marijuana business.

4

Relief Requested:

5

Alleged Debtor requests this Court to dismiss the Involuntary Petition.

6
7

DATED:  January 16, 2019

8

/s/ Howard Misle
Howard Misle

9

Prepared by:

10
11

/s/ Lenard E. Schwartzer

12

Lenard E. Schwartzer, Esq.
SCHWARTZER & MCPHERSON LAW FIRM

13

2850 S. Jones Blvd., Suite 1
Las Vegas, NV  89146

14

Las Vegas, Nevada 89101

15

*Counsel for Alleged Debtor*

16
17
18
19
20
21
22
23
24
25
26
27
28

**Answer to Involuntary Petition**

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122